## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2017, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Hilary Bowe Ricks
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darrell Brooks, *Appellant-Defendant,* | July 31, 2017 |
| | Court of Appeals Case No. 49A02-1703-CR-403 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Angela D. Davis, Judge The Honorable Peggy R. Hart, Magistrate |
| | Trial Court Cause No. 49G16-1610-F6-40425 |

**Bradford, Judge.**

# Case Summary

Appellant-Defendant Darrell Brooks was engaged in an approximately nine-year romantic relationship with Sandra Young. Unfortunately, the relationship ended. On October 5, 2017, Brooks and Young were involved in an altercation when Brooks went to the apartment that the couple had shared in order to pick up some of his personal belongings. Brooks was subsequently charged with Level 6 felony battery resulting in moderate bodily injury along with other lesser-included offenses. Brooks was found guilty of the charged offense following a bench trial.

On appeal, Brooks challenges his conviction, arguing that the State failed to provide sufficient evidence to rebut his claim of self-defense. Because we conclude otherwise, we affirm.

# Facts and Procedural History

At some point in or around the early part of October of 2016, Brooks's nine-year romantic relationship with Young ended. On October 5, 2016, Brooks went to the apartment that he had once shared with Young to collect some of his personal belongings. While at the apartment, an altercation broke out. This altercation was initially only verbal in nature, but eventually progressed to be physical in nature. Young suffered pain and significant bruising as a result of Brooks's actions during this altercation.

[4]     On October 18, 2016, Appellee-Plaintiff the State of Indiana ("the State") charged Brooks with Count I – Level 6 felony domestic battery resulting in moderate bodily injury, Count II – Class A misdemeanor domestic battery, and Count III – Class A misdemeanor battery resulting in bodily injury. Brooks subsequently waived his right to a jury trial.

[5]     The trial court conducted a bench trial on February 3, 2017. During trial, Brooks argued that Young had been the aggressor and that he had acted in self-defense. Young's testimony, however, indicated otherwise.

[6]     Young testified that she and Brooks were engaged in a verbal argument about the end of their relationship when Brooks escalated the argument by making it physical. When asked to describe what happened next, Young testified as follows:

> [Young]:     Well, I was in the hallway and he was retrieving his stuff, like I said, and I was in the doorway of the apartment and he pushed -- I was in his face and I was asking him, so this is what you really want, you know, and you're going to leave here, you know, and just questioning him and he said like, I'm getting my things and I'm leaving, so just, you know, get out of my face. And I was still -- (unintelligible), you know, so he pushed me.
> [The State]:  When you say he pushed you, can you describe that? Like where did he touch your body?
> [Young]:     He just pushed me up here in my chest area (indicating).
> [The State]:  Okay, you're gesturing towards the top of your chest. Was it your neck?
> [Young]:     Uh-huh, here (indicating). Like just get out of the way and he pushed me.
> [The State]:  Okay. And when he pushed you, was that with his

hands, his arms, or something else?

[Young]: His hand.

[The State]: And what happened when he pushed you.

[Young]: I slipped and I fell.

[The State]: Okay. What happened next?

[Young]: Well, I got up, I started swinging. I was upset that I had fell down [sic] and I got up and I started swinging.

[The State]: Okay. And did any of those swings make contact with him?

[Young]: Yes.

[The State]: How did he respond to that?

[Young]: He was upset.

[The State]: Okay. Did you continue to argue?

[Young]: Pretty much.

[The State]: Okay.

[Young]: Yes.

[The State]: Thank you. At any point did any other physical violence happen?

[Young]: Yes.

[The State]: Can you describe that for the Court?

[Young]: Mr. Brooks picked up a paint stick out of his materials and swung and hit me.

****

[The State]: When you say paint stick, can you describe the -- what are you describing?

[Young]: It's an extension stick that he screws on the end of this roller when he's painting for heights.

[The State]: Do you know what that was made of?

[Young]: Wood.

[The State]: Okay. And when he grabbed that paint stick, what was going on in that moment?

[Young]: We were tussling.

[The State]: Tussling?

[Young]: Uh-huh.

[The State]: Okay. And did he hit you with it?

[Young]: Yes.

[The State]: Where on your body did he hit you with it?

[Young]: Across my back.
[The State]: Okay. And when he hit you with it, did it hurt?
[Young]: Yes.
[The State]: On a scale of one to ten, can you describe about how much it hurt?
[Young]: Well, I would say a five.
[The State]: Five on a scale of one to ten?
[Young]: Uh-huh.
[The State]: Did you have any bruising from that?
[Young]: Yes.

Tr. Vol. II, pp. 9-12.

[7] Following the conclusion of the evidence, the trial court found Brooks guilty as charged. The trial court subsequently merged Counts II and III into Count I and sentenced Brooks to a term of 545 days with 365 days suspended and 180 executed in the Marion County Jail. On February 23, 2017, the trial court ordered that the remaining portion of Brooks's sentence would be served with Marion County Community Corrections. This appeal follows.

# Discussion and Decision

[8] In challenging his conviction on appeal, Brooks does not argue that the State presented insufficient evidence to prove that he battered Young or that Young was injured as a result of Brooks's actions. Brooks only argues that the State presented insufficient evidence to negate his claim of self-defense beyond a reasonable doubt.

[9] Our standard for reviewing a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same standard

used for any claim of insufficient evidence. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). We neither reweigh the evidence nor judge the credibility of the witnesses. *Adetokunbo v. State*, 29 N.E.3d 1277, 1280 (Ind. Ct. App. 2015). We consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Id.* "A conviction will be affirmed if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Id.* at 1280-81.

**\*\*\*\***

"A valid claim of self-defense is legal justification for an otherwise criminal act." *Wallace*, 725 N.E.2d at 840. "A person is justified in using reasonable force against any other person to protect the person from what the person reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2(c). To prevail on a claim of self-defense, a defendant must show he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002); Ind. Code § 35-41-3-2.

"When a claim of self-defense is raised and finds support in the evidence, the State bears the burden of negating at least one of the necessary elements." *King v. State*, 61 N.E.3d 1275, 1283 (Ind. Ct. App. 2016), *trans. denied*. "The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Id.* If a defendant is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 801.

*Wolf v. State*, 76 N.E.3d 911, 915 (Ind. Ct. App. 2017).

[10] The evidence most favorable to the judgment of the trial court establishes that (1) Brooks instigated the physical contact between the two and (2) Brooks escalated the situation by striking Young with a wooden stick. Again, Young testified that she and Brooks were engaged in a verbal argument about the end of their relationship when Brooks escalated the argument by making it physical. Young further testified that after Brooks pushed her in the upper chest area and knocked her down, he escalated the altercation by hitting her across the back with a wooden stick. Young's testimony convinces us that the trial court properly rejected Brooks's claim of self-defense as it proves that Brooks both instigated and escalated the physical contact between he and Young. We therefore conclude that the State presented sufficient evidence to negate Brooks's self-defense claim beyond a reasonable doubt.

[11] The judgment of the trial court is affirmed.

May, J., and Barnes, J., concur.