NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2021
Decided August 6, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-3061

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:18-CR-00287(1) |
| MONTE DIGGS, *Defendant-Appellant*. | Ronald A. Guzmán, *Judge*. |

**O R D E R**

Monte Diggs pleaded guilty to possessing a firearm as a felon, 18 U.S.C. § 922(g)(1), and the district court sentenced him to 88 months in prison. On appeal he contends that the district judge overlooked mitigating arguments and relied on extraneous facts about pervasive gun violence in Chicago. The judge did not procedurally err in sentencing Diggs, so we affirm.

One January evening, Diggs was standing near a home on Chicago's west side (Austin) when he spotted police in the area. He ran into the backyard of a nearby residence and tossed a loaded gun—a semiautomatic pistol with a large-capacity

magazine—onto the roof of a house. Police recovered the gun and apprehended Diggs. He was charged with, and eventually pleaded guilty to, unlawfully possessing a firearm as a felon. *See* § 922(g)(1).

In a presentence investigation report, a probation officer calculated a guidelines range of 92 to 115 months (based on a total offense level of 23 and criminal history category of VI).

In his sentencing memorandum, Diggs raised several arguments in mitigation that, he believed, justified a below-guidelines sentence. He highlighted his difficult childhood in a neighborhood afflicted with "gangs, drugs, and violence" and argued that his early exposure to substance abuse contributed to his long history of arrests. That criminal history was further mitigated, he argued, by his relative youth (he was under 25 when he committed most of his offenses). Diggs added that he obtained the gun for personal protection, citing social science research that showed high rates of gun ownership for personal-safety reasons in his neighborhood. He also urged the court to consider the risks that COVID-19 posed to prisoners. The government countered that a sentence at the bottom of the guidelines range—92 months—would be appropriate to deter future wrongdoing and reflect the seriousness of the offense.

The district judge adopted the presentence investigation report's guidelines calculation without objection and sentenced Diggs to 88 months (92 months less four months' credit for time that Diggs served in state custody). In weighing the factors under 18 U.S.C. § 3553(a), the judge noted Diggs's "truly extensive" criminal history (five juvenile findings of delinquency and 19 adult convictions), remarking that Diggs had "no respect whatsoever" for the law. The judge added that Diggs's firearm-possession offense was "frankly as serious as … there is," given the ongoing gun violence in Chicago. The judge also acknowledged Diggs's "out-and-out traumatic childhood" in "an area just devastated by violence and drugs." Based on these considerations, the judge settled upon a bottom-of-the-range sentence—a term necessary to reflect the seriousness of the offense and deter illegal gun possession by those with "no good reason to have them, no legal reason to have them, nor justifiable reason to have them."

On appeal, Diggs argues that the district judge procedurally erred by overlooking or inadequately analyzing four mitigating arguments for a below-guidelines sentence. First, Diggs contends that the judge ignored his argument that he obtained the gun for personal safety, not criminal purposes. But a judge's consideration

of principal mitigating arguments can be "implicit or imprecise," *United States v. Patel*, 921 F.3d 663, 670 (7th Cir. 2019), particularly when, as here, the judge imposes a within-guidelines sentence and states that he has reviewed the written arguments. *See United States v. Terronez*, 926 F.3d 390, 395 (7th Cir. 2019); *United States v. Graham*, 915 F.3d 456, 459 (7th Cir. 2019). By stating that Diggs had "no good reason" to have the gun, the judge rejected his justification for acquiring it.

Second, Diggs argues that the judge disregarded his argument about his relative youth during most of his arrests and convictions. True, the judge did not specify that Diggs committed most of his crimes before age 25. But the judge did distinguish between Diggs's juvenile and adult convictions, finding that his criminal history reflected a disrespect for the law and was more aggravating than mitigating. *See United States v. Stephens*, 986 F.3d 1004, 1010 (7th Cir. 2021).

Third, Diggs argues that the judge's discussion of his childhood-risk factors was too cursory to allow for meaningful appellate review. But that argument misapprehends the nature of the judge's statements. The judge referred to Diggs's "traumatic childhood" in an area blighted by violence and drugs, acknowledging that "those life experiences obviously made it really difficult for him to stay out of trouble." The judge's discussion may have been brief, but judges need not "belabor the obvious" so long as their thinking is clear, as it was here. *United States v. Castaldi*, 743 F.3d 589, 595 (7th Cir. 2014).

Finally, Diggs argues that the judge glossed over his mitigation argument that the COVID-19 pandemic has made time in prison "more difficult and dangerous." But the judge needn't have commented on such a "generic challenge," given that Diggs did not suggest that he was more at risk of COVID-19 in prison than any other prisoner. *United States v. McLaughlin*, 760 F.3d 699, 707 (7th Cir. 2014). Further, to the extent that conditions arising from COVID-19 provide any mitigating argument, the Bureau of Prisons has now made vaccines available to inmates, and Diggs has not asserted that the Bureau has denied him access to a vaccine or that he is medically or otherwise unable to receive or benefit from one. *See United States v. Broadfield*, No. 20-2906, __F.4th__, 2021 WL 3076863, at *1–2 (7th Cir. July 21, 2021); *United States v. Ugbah*, No. 20-3073, __F.4th__, 2021 WL 3077134, at *1 (7th Cir. July 21, 2021).

Next, Diggs argues that the proceedings were tainted by the judge's comments about Chicago's general problems with gun violence. Citing *United States v. Robinson*, 829 F.3d 878, 880 (7th Cir. 2016), Diggs contends that the judge inappropriately blamed

him for a societal problem that was not tied to his specific offense. The judge's comments were concise enough that we repeat them here:

> The city of Chicago, for the last few years and certainly for the last few months, has been suffering from an absolutely incredible barrage of gun violence. You know, children are shot in front of their homes while they're playing. People are shot inside their homes by stray bullets. People in restaurants eating after going to church witness gangland type of shootings, three people getting out and shooting guns.
>
> The violence is almost daily. It is recurring. It has so far been unaffected by any efforts of law enforcement to stop it. And it is seriously degrading the conditions of life for large numbers of innocent citizens of Chicago who have to get up, go to work, to school, to church every day surrounded by the fear that someone with a gun, usually involved in drug-dealing in one form or another, is going to shoot them or try to shoot somebody else and hit them instead, or their children.
>
> So, the Court is extremely concerned by this violence, which is, most of the time, connected with drugs and gangs. All three go together, from gangs defending their drug points, retaliations. And this defendant has in his background a mixture of dealing narcotics; and now he's caught with a gun, fully-loaded, semi-automatic 9-millimeter weapon, which is lethal and meant for only one thing, and that's to shoot other people.

The judge's comments do not undermine the appropriateness of the sentence. When assessing the seriousness of a firearm offense, district judges may consider "locality-based categorical factors" like Chicago's increase in gun violence. *United States v. Hatch*, 909 F.3d 872, 874–75 (7th Cir. 2018) (affirming above-guidelines sentence for firearm trafficking where judge commented on the "gun violence that plagues this city" and "[c]hildren [being] shot while playing in front of their own homes"). The judge's remarks in this case are not meaningfully distinguishable from his comments in *Hatch* or other cases in which we have upheld the imposed sentences. *See, e.g.*, *United States v. Dawson*, 980 F.3d 1156, 1161, 1163 (7th Cir. 2020) (affirming above-guidelines revocation sentence for illegal firearm possession where judge remarked that Chicago was "a city where innocent people are shot every day, where you turn on the news … and you find another horrible weekend where so many dead and so many injured"). As in *Hatch*, the record here shows that the judge was not blaming Diggs for Chicago's gun violence but

rather acknowledging the local context when assessing the seriousness of his offense and the need to deter similar conduct. *See* 18 U.S.C. § 3553(a)(2)(A)–(B).

Finally, Diggs argues that the judge incorrectly inferred that his firearm offense had something to do with drugs and gang activity. He points to the judge's statements that "All three go together, from gangs defending their drug points, retaliations. And this defendant has in his background a mixture of dealing narcotics; and now he's caught with a gun[.]" He urges that that inference was unreasonable because his last drug-dealing conviction was eight years earlier, and no evidence tied his gun possession to drug dealing.

The judge's comments were not inappropriate. The judge was entitled to consider Diggs's criminal history. *See* § 3553(a)(1). And even if the record does not support a finding that Diggs's firearm offense related to drug dealing, the judge was more than entitled to conclude that the firearm offense was particularly serious. *See* § 3553(a)(2)(A).

AFFIRMED